FILED
2020 Jan-07  PM 01:46
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ALABAMA

| | | |
|---|---|---|
| **WILLIAM BAXLEY, individually and on behalf of all others similarly situated,** | § § § § § § | **CLASS ACTION COMPLAINT FOR VIOLATIONS OF FEDERAL SECURITIES LAWS** |
| Plaintiff, | § § | |
| **v.** | § § | **Case No.** |
| **PARETEUM CORPORATION, ROBERT TURNER, and EDWARD O'DONNELL,** | § § § § § | _____ |
| Defendants. | § § | **Jury Trial Demanded** |

---

## COMPLAINT

---

COMES NOW Plaintiff William Baxley ("Plaintiff"), individually and on behalf of all other persons similarly situated, and hereby files this class action complaint against Defendants Pareteum Corporation ("Paretuem"), Robert Turner ("Turner"), and Edward O'Donnell ("O'Donnell") (collectively, the "Defendants"), asserting the following based upon Plaintiff's personal knowledge as to Plaintiff's own actions and upon information and belief as to all other matters, including but not limited to, a review of the Defendants' public documents, announcements made by Defendants, filings and press releases of the United States Securities and Exchange Commission ("SEC") published by and regarding Pareteum, and information readily obtainable through online resources. Plaintiff believes that

substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1. This is a class action on behalf of persons or entities who owned, purchased, or otherwise acquired publicly traded Pareteum securities between December 26, 2017 and October 21, 2019, inclusive (the "Class Period"). Plaintiff seeks to recover compensable damages caused by Defendants' violations of the Securities Exchange Act of 1934 (the "Exchange Act").

## JURISDICTION AND VENUE

2. This Court has exclusive jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 78aa. In particular, Plaintiff alleges violations of Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and SEC Rule 10b-5 (17 C.F.R. § 240.10b-5).

3. Venue is proper in this judicial district pursuant to 15 U.S.C. § 78aa, because at all times pertinent to this action, Pareteum transacted business in this judicial district.

4. In connection with the acts, conduct, and other wrongs alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mails, interstate telephone communications, and the facilities of the national securities

exchange.

## **PARTIES**

5.    Plaintiff, as set forth in the accompanying certification, incorporated by reference herein, purchased Pareteum securities during the Class Period and was economically damaged thereby.

6.    Defendant Pareteum Corporation is a corporation formed and existing under the laws of the State of Delaware with its principal office located at 1185 Avenue of the Americas, New York, New York 10036. Pareteum is a publicly traded corporation and its shares trade on the NASDAQ under the ticker symbol "TEUM." Upon information and belief, Pareteum transacted business within this judicial district during the Class Period.

7.    Defendant Robert Turner is the founder of Pareteum, and served as Pareteum's Chief Executive Officer ("CEO") and Chairman of the Board of Directors throughout the Class Period.

8.    Defendant Edward O'Donnell served as Pareteum's Chief Financial Officer ("CFO") throughout the Class Period.

9.    Both Turner and O'Donnell:

    a.    directly participated in the management of Pareteum;

    b.    were directly involved in the day-to-day operations of Pareteum at the highest levels;

c.      were privy to confidential proprietary information concerning Pareteum and its business and operations;

d.      were directly or indirectly involved in drafting, producing, reviewing and/or disseminating the false and misleading statements and information alleged herein;

e.      were directly or indirectly involved in the oversight or implementation of Pareteum's internal controls;

f.      were aware of or recklessly disregarded the fact that the false and misleading statements were being issued concerning Pareteum; and/or

g.      approved or ratified these statements in violation of the federal securities laws.

10.     Pareteum is liable for the acts of Turner and O'Donnell and its employees under the doctrine of *respondeat superior* and common law principles of agency, because all of the wrongful acts complained of herein were carried out within the scope of their employment.

## SUMMARY OF FACTUAL EVENTS

11.     On March 12, 2019, Pareteum released earnings for the fourth quarter of 2018 and for the fiscal year ended December 31, 2018.  Pareteum reported $14.3 million in total revenue for the quarter, and $32.4 million in total revenue for the

fiscal year.

12.    On March 18, 2019, Pareteum filed a Form 10-K with the SEC, which provided its financial results and position for the fiscal year ended December 31, 2018 (the "2018 10-K").  The 2018 10-K was signed by Defendants Turner and O'Donnell.  The 2018 10-K contained signed certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX") by Defendants Turner and O'Donnell attesting to the accuracy of financial reporting, the disclosure of any material changes to Pareteum's internal control over financial reporting and the disclosure of all fraud.

13.    Pareteum's 2018 10-K stated the following regarding revenue recognition:

> For the mobile solutions services the Company recognizes revenues from customers accessing our cloud-based application suite in two different service offerings, namely managed services and bundled services.
>
> For managed services, revenues are recognized for network administration services provided to end users on behalf of Mobile Network Operators (MNO) and virtual Mobile Network Operators (MVNO's). Managed service revenues are recognized monthly based on an average number of end-users managed and calculated on a pre-determined service fee per user. For bundled services, the Company provides both network administration as well as mobile airtime management services. Revenues for bundled services are recognized  monthly based on an average number of end-users managed and mobile air time and calculated based on a pre-determined service fee. Technical services that meet the criteria to be separated as a separate unit of accounting are recognized as the services are performed. Otherwise they are deferred and recognized over the contract term. Our arrangements with customers do not provide the customer with

the right to take possession of the software supporting the cloud-based application service at any time.

Telecommunication revenues were recognized when delivery occurred based on a pre-determined rate and number of user minutes and number of calls that the Company has managed in a given month.

Professional services and other revenue include fees from consultation services to support the business process mapping, configuration, data migration, integration and training. Amounts that have been invoiced are recorded in accounts receivable and in net billings in excess of revenues or revenue, depending on whether the revenue recognition criteria have been met. Revenue for professional and consulting services in connection with an implementation or implantation of a new customer that is deemed not to have stand-alone value is recognized over the contractual period commencing when the subscription service is made available to the customer. Revenue from other professional services that provide added value such as new features or enhancements to the platform that are deemed to have standalone value to the customer or are sold separately from the original hosting arrangement, are deferred and revenue recognition occurs when the feature is activated.

The Company used revenue recognition standards for ASC 605 for the year ended December 31, 2017 and adopted the revenue recognition standards for ASC 606 beginning on January 1, 2018 using the modified retrospective transition method and applied these standards for the full year ended December 31, 2018.

14. On May 7, 2019, Pareteum announced earnings for the first quarter of 2019, reporting $23 million in total revenue.

15. On May 10, 2019, Pareteum filed a Form 10-Q with the SEC, which provided its financial results and position for the quarter ended March 31, 2019 (the "1Q 2019 10-Q"). The 1Q 2019 10-Q was signed by Turner and O'Donnell.  The

1Q 2019 10- Q contained signed SOX certifications by Turner and O'Donnell attesting to the accuracy of financial reporting, the disclosure of any material changes to the Pareteum's internal control over financial reporting and the disclosure of all fraud.

16.     On August 6, 2019, Pareteum announced earnings for the second quarter of 2019, reporting $34.1 million in total revenue.

17.     On August 9, 2019, Pareteum filed a Form 10-Q with the SEC, which provided its financial results and position for the quarter ended June 30, 2019 (the "2Q 2019 10- Q").  The 2Q 2019 10-Q was signed by Turner and O'Donnell.  The 2Q 2019 10-Q contained signed SOX certifications by Turner and O'Donnell attesting to the accuracy of financial reporting, the disclosure of any material changes Pareteum's internal control over financial reporting and the disclosure of all fraud.

18.     Pareteum statements were materially false and/or misleading, because they misrepresented and failed to disclose adverse facts pertaining to Pareteum's business, operations and prospects, which were known to Defendants or recklessly disregarded by them.

19.     Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (1) Pareteum improperly and inaccurately recognized revenue for certain customer transactions; (2) Pareteum's financial statements for

the fiscal year ending December 31, 2018, and quarters of ending March 31, 2019 and June 30, 2019 were false and could not be relied on; and (3) consequently, Pareteum's public statements were materially false and misleading and/or lacked a reasonable basis at all relevant times.

20.  On October 21, 2019, after the market closed, Pareteum issued a press release that Pareteum would restate its previously issued financial statements for the full 2018 fiscal year, and for the first and second quarter 2019.  The press release stated, in relevant part:

> **NEW YORK, NY – October 21, 2019 – Pareteum Corporation** (**Nasdaq: TEUM**) today announced that the Company will restate its previously issued consolidated financial statements as of and for the full year ended December 31, 2018, and interim periods ended March 31, 2019 and June 30, 2019. This decision was approved by the Company's Board of Directors upon the recommendation of the Company's Audit Committee, and after consultation with management and the Company's independent registered public accounting firm.
>
> Investors should no longer rely upon the Company's previously released financial statements for the time periods cited above. Similarly, related press releases, earnings releases, and investor communications describing the Company's financial statements for these periods should no longer be relied upon.
>
> ***The decision to restate these financial statements is based on the Company's conclusion that certain revenues recognized during 2018 and 2019 should not have been recorded during that period.*** For certain customer transactions, the Company may have prematurely or inaccurately recognized revenue. These restatements should not impact historical cash or cash equivalents based upon the current review. At the present time, the restatements are expected to impact Revenue, Cost of

Service, Operating Income, Net Loss, Accounts Receivable and other Balance Sheet line items. ***While the Company's analysis is still underway, the Company currently estimates the revenue impact for the full year 2018 to be a reduction of approximately $9 million. For the first half of 2019, the Company currently estimates the revenue impact to be a reduction of approximately $24 million***.

At this time, the Company has not fully completed its review and the expected financial impact of the restatement described above is preliminary and subject to change. The Company cannot predict the aggregate amount of revenue that will ultimately be restated, whether additional periods beyond those referenced above will be affected, and the final outcome or timing of the Company's filing of restated financial statements for the affected annual and quarterly periods. Until the full magnitude of these transactions is analyzed and understood, the Company cannot provide forward guidance, and expects financial results for the second half and full year 2019 will be materially below current analysts' estimates.

(Emphasis added.)

21.    On this news, shares of Pareteum fell $0.4401 per share or over 59% to close at $0.2992 per share on October 22, 2019.

22.    As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's common shares, Plaintiff and other class members have suffered significant losses and damages.

## **PLAINTIFF'S CLASS ACTION ALLEGATIONS**

23.    Plaintiff brings this action as a class action pursuant to Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure on behalf of a class consisting of all persons other than defendants who acquired publicly traded Pareteum securities

during the Class Period, and who were damaged thereby (the "Class").  Excluded from the Class are Defendants, the officers and directors of Pareteum, members of the Turner's and O'Donnell's immediate families and their legal representatives, heirs, successors or assigns and any entity in which an Officer or Director of Pareteum have or had a controlling interest.

24.    The members of the Class are so numerous that joinder of all members is impracticable.  Throughout the Class Period, Pareteum securities were actively traded on NASDAQ.  While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds, if not thousands, of members in the proposed Class.

25.    Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

26.    Plaintiff will fairly and adequately protect the interests of the members of the Class, has retained a competent securities' counsel, and has no interests antagonistic to or in conflict with those of the Class.

27.    Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

o  whether the Exchange Act was violated by Defendants' acts as alleged herein;

o  whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the financial condition and business Pareteum;

o  whether Defendants' public statements to the investing public during the Class Period omitted material facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading;

o  whether the Defendants caused Pareteum to issue false and misleading SEC filings during the Class Period;

o  whether Defendants acted knowingly or recklessly in issuing false and SEC filing;

o  whether the prices of Pareteum's securities during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and

o  whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

28.    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is

impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

29.   Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- o  Pareteum shares met the requirements for listing, and were listed and actively traded on NASDAQ, a highly efficient and automated market;

- o  As a public issuer, Pareteum filed periodic public reports with the SEC and NASDAQ;

- o  Pareteum regularly communicated with public investors via established market communication mechanisms, including through the regular dissemination of press releases via major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and

- o  Pareteum was followed by a number of securities analysts employed by major brokerage firms who wrote reports that were widely distributed and publicly available.

30.   Based on the foregoing, the market for Pareteum securities promptly digested current information regarding Pareteum from all publicly available sources

and reflected such information in the prices of the shares, and Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

31.     Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information as detailed above.

## COUNT I
### For Violations of Section 10(b) And Rule 10b-5 – All Defendants

32.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

33.     This Count is asserted against Defendants is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

34.     During the Class Period, Defendants, individually and in concert, directly or indirectly, disseminated or approved the false statements specified above, which they knew or deliberately disregarded were misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

35.     Defendants violated §10(b) of the 1934 Act and Rule 10b-5 in that they:

o   employed devices, schemes and artifices to defraud;

o   made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or

o   engaged in acts, practices and a course of business that operated as a fraud or deceit upon plaintiff and others similarly situated in connection with their purchases of Pareteum securities during the Class Period.

36.     Defendants acted with scienter in that they knew that the public documents and statements issued or disseminated in the name of Pareteum were materially false and misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated, or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the securities laws. These defendants by virtue of their receipt of information reflecting the true facts of Pareteum, their control over, and/or receipt and/or modification of Pareteum's allegedly materially misleading statements, and/or their associations with the Company which made them privy to confidential proprietary information concerning Pareteum, participated in the fraudulent scheme alleged herein.

37.     Individual Defendants, who are the senior officers and/or directors of

the Company, had actual knowledge of the material omissions and/or the falsity of the material statements set forth above, and intended to deceive Plaintiff and the other members of the Class, or, in the alternative, acted with reckless disregard for the truth when they failed to ascertain and disclose the true facts in the statements made by them or other Pareteum personnel to members of the investing public, including Plaintiff and the Class.

38. As a result of the foregoing, the market price of Pareteum securities was artificially inflated during the Class Period. In ignorance of the falsity of Defendants' statements, Plaintiff and the other members of the Class relied on the statements described above and/or the integrity of the market price of Pareteum securities during the Class Period in purchasing Pareteum securities at prices that were artificially inflated as a result of Defendants' false and misleading statements.

39. Had Plaintiff and the other members of the Class been aware that the market price of Pareteum securities had been artificially and falsely inflated by Defendants' misleading statements and by the material adverse information which Defendants did not disclose, they would not have purchased Pareteum securities at the artificially inflated prices that they did, or at all.

40. As a result of the wrongful conduct alleged herein, Plaintiff and other members of the Class have suffered damages in an amount to be established at trial.

41. By reason of the foregoing, Defendants have violated Section 10(b) of

00009847v.2                                                    15

the 1934 Act and Rule 10b-5 promulgated thereunder and are liable to the plaintiff and the other members of the Class for substantial damages which they suffered in connection with their purchase of Pareteum securities during the Class Period.

## COUNT II
### Violations of Section 20(a) of the Exchange Act – Individual Defendants

42.    Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

43.    During the Class Period, the Individual Defendants participated in the operation and management of Pareteum, and conducted and participated, directly and indirectly, in the conduct of Pareteum's business affairs. Because of their senior positions, they knew the adverse non-public information about Pareteum's misstatement of revenue and profit and false financial statements.

44.    As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to Pareteum's financial condition and results of operations, and to correct promptly any public statements issued by Pareteum which had become materially false or misleading.

45.    Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which Pareteum disseminated in the marketplace during the Class Period concerning Pareteum's results of operations.

00009847v.2                                        16

Throughout the Class Period, the Individual Defendants exercised their power and authority to cause Pareteum to engage in the wrongful acts complained of herein. The Individual Defendants therefore, were "controlling persons" of Pareteum within the meaning of Section 20(a) of the Exchange Act. In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of Pareteum securities.

46. By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by Pareteum.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, on behalf of himself and the Class, prays for judgment and relief as follows:

a. declaring this action to be a proper class action, certifying Plaintiff as a class representative under Rule 23 of the Federal Rules of Civil Procedure;

b. awarding damages in favor of Plaintiff and the other Class members against all Defendants, jointly and severally, together with interest thereon;

c. awarding Plaintiff and the Class reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

d. awarding Plaintiff and other members of the Class such other and

further relief as the Court may deem just and proper.

## **JURY TRIAL DEMANDED**

Plaintiff hereby demands a trial by jury.

**CERTIFICATION AND VERIFICATION OF WILLIAM BAXLEY
PURSUANT TO FEDERAL SECURITIES LAWS**

STATE OF ALABAMA )

JEFFERSON COUNTY  )

Before me, the undersigned, a Notary Public in and for said county in said state, personally appeared William Baxley, who, being first duly sworn, certifies that:

1.     By authorizing this filing, Baxley has reviewed the Complaint and certifies that the information contained therein is correct to the best of his knowledge.

2.     Baxley has not served as a representative party on behalf of a class under the federal securities laws during the last three years.

3.     Baxley did not acquire the security that is the subject of this action at the direction of Baxley's counsel or in order to participate in this private action or any other litigation under the federal securities laws.

4.     Baxley is willing to serve as a representative party on behalf of a class, including providing testimony at deposition and trial, if necessary.

5.     Baxley represents and warrants that he is fully authorized to enter into and execute this certification.

6.     Baxley will not accept any payment for serving as a representative party on behalf of the class beyond Baxley's pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class as ordered or approved by the court.

7.     Baxley has made no transaction(s) during the Class Period in the debt or equity securities that are the subject of this action except those set forth below:

Pareteum Corporation Stock Acquisitions:

| **Type** | **Buy/Sell Date** | **Number of Shares** | **Price Per Share** |
|---|---|---|---|
| Common Stock | 4/8/19 | 5,000 bought | $4.79 |
| Common Stock | 4/22/19 | 5,000 bought | $4.18 |
| Common Stock | 4/22/19 | 2,000 bought | $4.18 |
| Common Stock | 4/22/19 | 3,000 bought | $4.16 |
| Common Stock | 8/26/19 | 5,000 sold | $2.51 |
| Common Stock | 9/5/19 | 5,000 sold | $1.90 |
| Common Stock | 6/27/19 | 2,000 sold | $2.20 |
| Common Stock | 6/27/19 | 3,000 sold | $2.20 |

William Baxley

Subscribed and sworn to before me on this _8th_ day of _December_ ,
2019.

Notary Public

My Commission Expires: __February 10, 2021__



Respectfully submitted this the 7th day of January 2020.

/s/ Andrew P. Campbell
Andrew P. Campbell
J. Harris Hagood

*Counsel for Plaintiff William Baxley,
individually and on behalf of all others
similarly situated*

P Campbell Partners

Andrew P. Campbell
J. Harris Hagood
Campbell Partners, LLC
505 20th Street North, Suite 1600
Birmingham, Alabama 35203
Telephone: (205) 224-0750
andy@campbellpartnerslaw.com
harris@campbellpartners.com

/s/ J. Mark White
J. Mark White

*Counsel for Plaintiff William Baxley,
individually and on behalf of all others
similarly situated*

WHITE ARNOLD & DOWD

J. Mark White
White Arnold & Dowd P.C.
2025 Third Avenue North, Suite 500
Birmingham, Alabama 35203
Telephone: (205) 323-1888
mwhite@whitearnolddowd.com

**THE FOLLOWING DEFENDANTS TO BE SERVED VIA CERTIFIED MAIL POSTAGE PREPAID:**

Pareteum Corporation
c/o Vcorp Services, LLC
1013 Centre Road, Suite 403-B
Wilmington, Delaware 19805


Robert Turner
c/o Pareteum Corporation
1185 Avenue of the Americas
37th Floor
New York, New York 10036


Edward O'Donnell
c/o Pareteum Corporation
1185 Avenue of the Americas
37th Floor
New York, New York 10036


/s/ Andrew P. Campbell
Of Counsel

00009847v.2                                   22